UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

HOSANNA MILLER, FAITH RUSSELL,
AND RACHEL MILLER, INDIVIDUALLY
AND ON BEHALF OF THOSE SIMILARLY
SITUATED,

      Plaintiffs,

v.

      CASE NO. 4:25-cv-00033-PPS-JEM

VISION OF HOPE MINISTRIES, INC.
AND FAITH CHURCH OF LAFAYETTE,
INC.

      Defendants.

### DEFENDANTS VISION OF HOPE MINISTRIES, INC. AND FAITH CHURCH OF LAFAYETTE, INC.'S AMENDED ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS AMENDED CLASS ACTION COMPLAINT

Defendants Vision of Hope Ministries, Inc. and Faith Church of Lafayette,

Inc. (collectively, "VOH"), by counsel, for their Amended Answer and Affirmative

Defenses to Plaintiffs' Amended Complaint, state as follows:

### PARTIES

1.     Plaintiff Hosanna Miller is an individual who resides in Tippecanoe County, Indiana.

**ANSWER: Defendant is without sufficient knowledge or information to admit or deny the allegation and therefore denies the same.**

2.     Plaintiff Faith Russell is an individual who resides in Madison County, Iowa.

**ANSWER: Defendant is without sufficient knowledge or information to admit or deny the allegation and therefore denies the same.**

1

3.      Vision of Hope Ministries is an Indiana non-profit corporation with its principal place of business in Tippecanoe County, Indiana.

**ANSWER: Admit.**

4.      Faith Church of Lafayette, Inc. is an Indiana non-profit corporation with its principal place of business in Tippecanoe County, Indiana.

**ANSWER: Admit.**

### JURISDICTION AND VENUE

5.      This Court properly has jurisdiction over this matter pursuant to 28 U.S.C. §1331 as Plaintiffs are asserting a claim arising under federal law.

**ANSWER: Admit.**

6.      This Court is a proper venue for Plaintiffs' claims pursuant to 28 U.S.C. §1391 inasmuch as Defendants may be found in this district, and because a substantial portion of the events giving rise to Plaintiffs' claims occurred within this judicial district.

**ANSWER: This is a legal conclusion to which no answer is required. To the extent an answer may be required, denied.**

### FACTUAL ALLEGATIONS

7.      Hosanna Miller was a resident at Vision of Hope beginning in the fall of 2021.

**ANSWER:  Defendant is without sufficient knowledge or information to admit or deny the allegation and therefore denies the same.**

8.      Faith Russell was a resident at Vision of Hope.

**ANSWER: Admit.**

9.      During their time as residents, Defendants expected Hosanna, Faith, and those similarly situated to perform a substantial amount of labor for which Defendants paid her no compensation.

**ANSWER: Denied.**

10.      Defendants obtained residents' forced, unpaid labor by means of threats of psychological harm.

**ANSWER: Denied.**

11.      Defendants obtained forced, unpaid labor from Hosanna, Faith, and those similarly situated by means of threats of reputational harm.

**ANSWER: Denied.**

12.      The women who came to Vision of Hope, including Plaintiffs, were seeking help for problems.

**ANSWER: Defendant is without sufficient knowledge or information to admit or deny the allegation and therefore denies the same.**

13.      Often these women were sent by their families or their churches.

**ANSWER: Defendant is without sufficient knowledge or information to admit or deny the allegation and therefore denies the same.**

14.      Often, the families or churches of women sent to Vision of Hope are paying hundreds of dollars per month for the women to be at Vision of Hope.

**ANSWER: Defendant is without sufficient knowledge or information to admit or deny the allegation and therefore denies the same.**

15. Once the women have arrived at Vision of Hope and the program had the steady stream of income related to their participation in the program, the residents generally received about one hour per week of "biblical counseling."

**ANSWER: Defendant is without sufficient knowledge or information to admit or deny the allegation and therefore denies the same.**

16. Aside from the "biblical counseling," residents at Vision of Hope were expected to assist with household chores like cooking, cleaning, and lawn care.

**ANSWER: Admit.**

17. In addition to the chores that Vision of Hope residents were expected to help with around the Vision of Hope house, they were also expected to devote considerable portions of their time to unpaid, forced labor for the benefit of Faith Church and its various arms.

**ANSWER: Denied.**

18. Vision of Hope residents were forced to perform unpaid labor at the Reclaimed Hope retail store.

**ANSWER: Denied.**

19. Vision of Hope residents were forced to perform unpaid labor at Faith

Church's Northend Community Center.

**ANSWER: Denied.**

20.    Vision of Hope residents were forced to perform unpaid labor at Faith Church's Senior Living Community.

**ANSWER: Denied.**

21.    Vision of Hope residents were forced to perform unpaid labor at Faith Church's facilities, including its gymnasium and / or recreation center.

**ANSWER: Denied.**

22.    Vision of Hope residents were forced to perform unpaid labor doing landscaping and lawn care for various Faith Church branches.

**ANSWER: Denied.**

23.    Though Vision of Hope residents were permitted to speak to their families while they were part of the program, those communications were carefully monitored by Vision of Hope.

**ANSWER: Defendant is without sufficient knowledge or information to admit or deny the allegation and therefore denies the same.**

24.    Often, Vision of Hope residents were dealing with struggles with their families.

**ANSWER: Defendant is without sufficient knowledge or information to admit or deny the allegation and therefore denies the same.**

25.    Often, Vision of Hope residents were dealing with struggles

which are known to their families.

**ANSWER: Defendant is without sufficient knowledge or information to admit or deny the allegation and therefore denies the same.**

26. If a Vision of Hope resident did not wish to participate in the forced, unpaid labor, Vision of Hope would often threaten to tell the resident's family that the resident was "in rebellion."

**ANSWER: Denied.**

27. This represented a substantial threat of serious psychological harm.

**ANSWER: Denied.**

28. This also represented a substantial threat of serious reputational harm.

**ANSWER: Denied.**

29. If a Vision of Hope resident did not wish to participate in the forced, unpaid labor, Vision of Hope would often threaten residents with a "consequence."

**ANSWER: Denied.**

30. A "consequence" could include community shunning of the non-compliant resident.

**ANSWER: Denied.**

31. This ever-present threat of community shunning of the non-compliant resident represented a substantial threat of serious psychological harm.

**ANSWER: Denied.**

32. This ever-present threat of community shunning of the non-compliant resident represented a substantial threat of serious reputational harm.

**ANSWER: Denied.**

33. Residents planned their weekly schedules.

**ANSWER: Admit.**

34. Residents' planned schedules were reviewed by Vision of Hope personnel.

**ANSWER: Admit.**

35. Residents' planned schedules were required to have adequate time allotted for residents to participate in the forced, unpaid labor demanded by Vision of Hope.

**ANSWER: Denied.**

36. If a resident sought to allot additional time for bible study and Vision of Hope deemed the planned time for labor participation inadequate, Vision of Hope could and did alter the resident's schedule to meet Vision of Hope's demands for the resident's unpaid labor, including displacing bible study for more labor.

**ANSWER: Denied.**

37. Vision of Hope and Faith Church used the residents at Vision of Hope as forced, unpaid labor to reduce their need to pay employees for cleaning.

**ANSWER: Denied.**

38. Vision of Hope and Faith Church used the residents at Vision of Hope as forced, unpaid labor to reduce their need to pay employees for

landscaping and lawn care.

**ANSWER: Denied.**

39.    Vision of Hope and Faith Church used the residents at Vision of Hope as forced, unpaid labor to reduce their need to pay employees for retail store staffing.

**ANSWER: Denied.**

40.    Vision of Hope and Faith Church used the residents at Vision of Hope as forced, unpaid labor to reduce their need to pay employees for running errands.

**ANSWER: Denied.**

41.    If a resident did not wish to participate in the forced, unpaid labor, sometimes the resident would be given a "consequence" of doing additional bible homework.

**ANSWER: Denied.**

42.    If a resident did not wish to participate in the forced, unpaid labor, sometimes the resident would be given a "consequence" of the "silent treatment."

**ANSWER: Denied.**

43.    If a resident did not wish to participate in the forced, unpaid labor, sometimes the resident would be given a "consequence" of losing their free time.

**ANSWER: Denied.**

44.    Residents often felt afraid to leave or unable to leave because of the threats of psychological harm.

**ANSWER: Defendant is without sufficient knowledge or information to admit or deny the allegation and therefore denies the same.**

45.    Residents often felt afraid to leave or unable to leave because of the threats of reputational harm.

**ANSWER: Defendant is without sufficient knowledge or information to admit or deny the allegation and therefore denies the same.**

46.    Residents who left the program were subjected to communal shunning, forcibly losing relationships that they have cultivated during their time as a resident.

**ANSWER: Denied.**

47.    This communal shunning is a serious psychological harm.

**ANSWER: Denied.**

48.    This communal shunning is a serious reputational harm.

**ANSWER: Denied.**

49.    Though residents had the option to leave Vision of Hope and thus end their forced labor, that option was often an illusion because of the threat of serious psychological and / or reputational harm.

**ANSWER: Denied.**

50.    Residents were also subjected to threats of serious physical harm by Vision of Hope's use of food restrictions and food control.

**ANSWER: Denied.**

51.     Residents were often given inadequate food.

**ANSWER: Denied.**

52.     The inadequate food posed a serious risk of physical harm to residents by means of malnutrition.

**ANSWER: Denied.**

53.     The food control exercised by Vision of Hope also posed a serious risk of psychological harm, as some residents at Vision of Hope were there for counseling for eating disorders.

**ANSWER: Defendant is without sufficient knowledge or information to admit or deny the allegation and therefore denies the same.**

54.     Residents were not permitted to eat additional food.

**ANSWER: Defendant is without sufficient knowledge or information to admit or deny the allegation and therefore denies the same.**

55.     Residents were required to eat all the food they were served, regardless of its quality or quantity.

**ANSWER: Defendant is without sufficient knowledge or information to admit or deny the allegation and therefore denies the same.**

56.     Residents who did not eat all their food were potentially subjected to "consequences," including shaming, extra Bible study, or shunning.

**ANSWER: Denied.**

57.    Residents who complained about the quality of the food were potentially subjected to "consequences," including shaming, extra Bible study, or shunning.

**ANSWER: Denied.**

58.    If a resident was eventually allowed to take a job, residents were at constant risk for losing their jobs as a result of actions by Vision of Hope.

**ANSWER: Denied.**

59.    One of the "consequences" that could be imposed Vision of Hope was that a resident could be "phased back" such that they lost their "privilege" to have a job outside of their forced, unpaid labor for Vision of Hope.

**ANSWER: Denied.**

60.    If a resident was "phased back" such that she could no longer work at her job, this imposed a serious reputational harm on the resident.

**ANSWER: Denied.**

61.    If a resident was "phased back" such that she could no longer work at her job, she would potentially just disappear from the lives of the peer relationships and connections she had cultivated at the workplace.

**ANSWER: Defendant is without sufficient knowledge or information to admit or deny the allegation and therefore denies the same.**

62.    This constant worry imposed a threat of serious psychological and

11

reputational harm if a resident did not strictly comply with the instructions of Vision of Hope, including the demands for unpaid, forced labor.

**ANSWER: Denied.**

### CLASS ACTION FACTUAL ALLEGATIONS

63.    Plaintiffs bring this action on their own behalf and on behalf of those similarly situated, pursuant to Trial Rules 23(A) and B(3).

**ANSWER: This paragraph states a legal conclusion to which no response is required. To the extent an answer could be required, denied.**

64.    Plaintiffs seek to represent the class defined as:

All individuals who are or have been residents of Vision of Hope within the last ten years who have been subjected to Defendants' common policy, pattern, practice, or plan whereby residents furnished forced, unpaid labor under the serious threat of psychological or reputational harm.

**ANSWER: This paragraph states a legal conclusion to which no response is required. To the extent an answer could be required, denied.**

65.    Excluded from the proposed class are individuals who make a timely election to be excluded as members of the class using the proper procedures for opting out, as well as the judges assigned to hear any aspect of this litigation and their immediate family members.

**ANSWER: This paragraph states a legal conclusion to which no response is required. To the extent an answer could be required, denied.**

66.    Plaintiffs reserve the right to amend the definitions of the class as further information is developed in discovery that would make proper the expansion, narrowing, or other modification of the definitions.

**ANSWER: This paragraph states a legal conclusion to which no response is required. To the extent an answer could be required, denied.**

67.    The potential members of the class are so numerous that the joinder of all members as named parties is impractical.

**ANSWER: This paragraph states a legal conclusion to which no response is required. To the extent an answer could be required, denied.**

68.    As of December 2024, there were nine current residents of Vision of Hope. Even if each resident stays for two years, the anticipated number of potential members of the class exceed 40.

**ANSWER: This paragraph states a legal conclusion to which no response is required. To the extent an answer could be required, denied.**

69.    The class will be readily identifiable from Vision of Hope's resident records.

**ANSWER:  Defendant is without sufficient knowledge or information to admit or deny the allegation and therefore denies the same.**

70.    Common questions of law and fact exist as to all members of the class and predominate over any questions affecting solely Plaintiffs. Among the questions of law and fact common to the class that predominate over questions

individual to Plaintiffs are:

a.     Whether Defendants engaged in a policy, pattern, practice, or plan of using the threat of serious psychological harm to extort forced, unpaid labor from residents;

b.     Whether Defendants engaged in a policy, pattern, practice, or plan of using the threat of serious reputational harm to extort forced, unpaid labor from residents;

c.     The ordinary schedule for the time that residents devoted to forced, unpaid labor from residents;

**ANSWER: This paragraph and all its subparts state a legal conclusion to which no response is required. To the extent an answer could be required, denied as to all.**

71.     Plaintiffs' claims are typical of those of other members of the class because Plaintiffs, like every other member of the class, were subjected to the same policy, pattern, practice, or plan whereby Defendants unlawfully used threats of serious psychological and / or reputational harm to extort forced, unpaid labor from residents.

**ANSWER: Denied.**

72.     This class action is also appropriate for certification because the unlawful and invalid policies, patterns, practices, or plans uniformly affected Plaintiffs and the members of the class by extorting from them forced, unpaid labor by means of threats of serious psychological and / or reputational harm.

14

**ANSWER: Denied.**

73.    Plaintiffs will fairly and adequately represent and protect the interest of the members of the class inasmuch as they have no known conflicts of interest that would be antagonistic to those of the other members of the class. Plaintiffs are not seeking relief that is adverse to any members of the class. The relief sought by Plaintiffs is for redress of the same rights and damages that they suffered, which are typical of the class. Furthermore, Plaintiffs have retained counsel experienced in class and collective action cases, and who intends to prosecute this action vigorously.

**ANSWER: This paragraph states a legal conclusion to which no response is required. To the extent an answer could be required, denied.**

74.    Class action litigation is an appropriate method for fair and efficient adjudication of the claims involved. Treating this matter as a class action is superior inasmuch as it will permit a large number of members of the class to prosecute common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of effort and expense that would be required in the administration of hundreds of individual actions.

**ANSWER: This paragraph states a legal conclusion to which no response is required. To the extent an answer could be required, denied.**

75.    Furthermore, class action administration will permit the adjudication of claims that might otherwise be relatively modest, to the point that individuals might not be able to afford to litigate a complex claim against a

15

powerful entity like Faith Church, which enjoys millions of dollars in revenue annually.

**ANSWER: This paragraph states a legal conclusion to which no response is required. To the extent an answer could be required, denied.**

76. Additionally, it is in the interest of judicial economy to resolve this many claims in one action, as a multiplicity of actions would impose a burden on the courts.

**ANSWER: This paragraph states a legal conclusion to which no response is required. To the extent an answer could be required, denied.**

77. The nature of this action makes the use of class action particularly efficient and appropriate, since individual adjudication would pit individuals of comparatively modest means against an entity with a budget in the tens of millions, with superior financial and legal resources.

**ANSWER: This paragraph states a legal conclusion to which no response is required. To the extent an answer could be required, denied.**

78. The litigation of the claims of Plaintiffs and the members of the class would be manageable because of the uniformity of Defendant's conduct and its effect on Plaintiffs and members of the class.

**ANSWER: This paragraph states a legal conclusion to which no response is required. To the extent an answer could be required, denied.**

79. Adequate notice can be given to members of the class using the

16

information already in Defendants' possession, custody, or control.

**ANSWER: This paragraph states a legal conclusion to which no response is required. To the extent an answer could be required, denied.**

80.    There is little or no advantage to be gained by members of the class individually controlling the prosecution of separate actions.

**ANSWER: This paragraph states a legal conclusion to which no response is required. To the extent an answer could be required, denied.**

## COUNT I: VIOLATION OF THE FORCED LABOR PROVISIONS OF THE TRAFFICKING VICTIMS PROTECTION ACT 18 U.S.C. 1581 *ET SEQ.*

81.    Defendants induced or obtained the labor of Plaintiffs and those similarly situated through threats of serious harm.

**ANSWER:  Denied.**

82.    Defendants acted knowingly or intentionally in inducing or obtaining the labor of Plaintiffs and those similarly situated.

**ANSWER: Denied.**

83.    Defendants' threats of serious harm included, but were not necessarily limited to, threats of psychological harm and threats of reputationally harm.

**ANSWER: Denied.**

84.    The threats made by Defendants were sufficiently serious, under all the surrounding circumstances, that a reasonable person of the same background in the same circumstances would feel compelled to perform or continue performing the

labor to avoid incurring the harm.

**ANSWER: Denied.**

85.    Defendants benefitted from participation in the venture which was engaged in providing or obtaining the labor of Plaintiffs and those similarly situated.

**ANSWER: Denied.**

## DEFENDANT'S AFFIRMATIVE DEFENSES

### FIRST DEFENSE

Plaintiffs fail to state a claim upon which relief can be granted and their claims must be dismissed.

### SECOND DEFENSE

Plaintiffs' claims fail as a matter of law.

### THIRD DEFENSE

Plaintiffs' claims are barred by the equitable doctrines of waiver, estoppel, laches and/or unclean hands.

### FOURTH DEFENSE

Plaintiffs' claims are barred by the statute of limitations.

### FIFTH DEFENSE

Plaintiffs' injuries are caused in whole or in part by their own negligent and/or willful acts, and any recovery must be diminished in whole or in part.

### SIXTH DEFENSE

Plaintiffs failed to mitigate their damages, if any.

18

## SEVENTH DEFENSE

Plaintiffs' claims are barred by the doctrine of assumption of risk.

## EIGHTH DEFENSE

Defendants' acts are subject to, protected under, and/or privileged by the

First Amendment's Establishment and Free Exercise Clauses, including but not

limited to the Church Autonomy Doctrine and Ministerial Exception.

## NINTH DEFENSE

Defendants' acts are subject to, protected under, and/or privileged by the

First Amendment's Freedom of Speech Clause.

## TENTH DEFENSE

Defendants' acts are subject to, protected under, and/or privileged by the

Fourteenth Amendment.

## ELEVENTH DEFENSE

Defendants' acts are subject to and protected by the Federal and/or Indiana

Religious Freedom Restoration Act (RFRA).

## TWELFTH DEFENSE

Plaintiffs lack standing.

## THIRTEENTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, by written releases, true

copies of which are attached hereto as **Exhibit A** (Plaintiff Miller) and **Exhibit B**

(Plaintiff Russell, then known as Faith Shepherd).

19

## FOURTEENTH DEFENSE

To the extent that any defense raised by Defendants is not an affirmative defense, Defendants in no way imply that Defendants assume the burden of proof for such defenses, and Defendants do not waive any additional defenses.

## FIFTEENTH DEFENSE

Defendants reserve the right to assert additional defenses as they become available and evident through discovery or investigation.

Respectfully submitted,

/s/ Barry L. Loftus

| | |
|---|---|
| Barry L. Loftus | #20993-79 |
| Jason W. Bennett | #22895-79 |
| Kirstie E. Klutzke | #38239-79 |

300 Main Street, Suite 900
Lafayette, IN 47901
Phone: (765) 423-1561
Fax: (765) 742-8175
Email: bll@stuartlaw.com
       jwb@stuartlaw.com
       kek@stuartlaw.com
*Attorneys for Defendants*

20